The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of the award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On December 1, 1995, an employment relationship existed between plaintiff-employee and defendant-employer.
3. The Hartford Insurance Company was the carrier on the risk at all relevant times.
4. At the time of the injury sustained by plaintiff, plaintiff's average weekly wage was $368.50, which yields a compensation rate of $245.68.
5. On December 1, 1995, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer.
6. Defendant-carrier filed an Industrial Commission Form 60, Admission of the Employee's Right to Compensation, pursuant to N.C.G.S. §97-18(b).
7. Plaintiff has received temporary total disability compensation from December 8, 1995 through April 15, 1999.
8. An Industrial Commission Form 24, Application to Terminate or Suspend Payment of Compensation pursuant to N.C.G.S. § 97-18.1, was approved by Special Deputy Commissioner Gina E. Cammarano on May 18, 1999.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a 57-year-old right hand dominant female, who completed the eighth grade.
2. Prior to her employment with defendant-employer, plaintiff worked as a cook and was part owner of a seafood market and restaurant.
3. Since 1989, plaintiff worked for defendant-employer as a Sub-Assembler I in defendant-employer's furniture manufacturing plant in Chadbourn.
4. Plaintiff's job required her to install wooden panels, slide rails and lock bars on parts of desks.
5. Plaintiff was not required to lift more than 17 pounds at one time.
6. On December 1, 1995, plaintiff sustained an admittedly compensable injury to her back, when she fell while carrying bookcase ends to a conveyor on the other side of her workstation.
7. On December 2, 1995, plaintiff was seen in the emergency room at Columbus County Hospital in Whiteville, where she was diagnosed as having sustained a contusion to her low back.
8. Plaintiff was then seen by her family physician, Dr. Edward Traylor. Dr. Traylor requested an MRI of the lumbar spine, which was consistent with a fracture of the fifth sacral segment with no evidence of displacement or focal disc herniation. Dr. Traylor then referred plaintiff to Dr. Adam P. Brown, a neurosurgeon in Wilmington.
9. By April 25, 1996, plaintiff was doing better, with no significant back or radiating leg pain. An MRI scan was performed in May 1996 and was unremarkable. Dr. Brown indicated that plaintiff's condition would certainly improve. He also recommended that she see Dr. Michael Carter in Wilmington. Dr. Brown stated that based on the sacral fracture without deformity or residual neurological deficit, plaintiff's permanent partial impairment would be 5% of the back.
10. On May 7, 1996, plaintiff underwent a functional capacity evaluation at Work Returns in Wilmington.
11. Dr. Michael Carter stated on July 10, 1996, that most of plaintiff's symptoms were coming from deconditioning related to her prolonged period of inactivity when she was on bed rest. He recommended a program of gradual exercise to emphasize walking. In addition, he indicated that the FCE results raised a concern of the possibility of secondary gain considerations because of plaintiff's lack of participation in that she refused to perform 15 of 19 tasks. Dr. Carter stated that plaintiff was capable of light-duty work at that time, if she was allowed to change positions so she did not have to sit or stand for too long at one time. Dr. Carter stated that return to any type of work would be desirable. Dr. Carter did not feel that any further diagnostic testing or surgical intervention was indicated.
12. On December 18, 1996, Dr. Carter reviewed a videotape concerning a possible job assignment, a molding cutter position. Dr. Carter had not seen plaintiff since July 1996. However, Dr. Carter thought it would be reasonable for plaintiff to try this job as it did not require excessive lifting and appeared to allow frequent change in position. He recommended that she start at four hours per day and progress up to eight hours per day, as her endurance improved.
13. On June 11, 1997, plaintiff saw Dr. Charles S. Haworth, a neurosurgeon with Duke University Medical Center. Dr. Haworth stated that he could see no evidence of a fracture on the plain spine films or on the MRI scan. Dr. Haworth stated that he would obtain updated spine films, an MRI scan, and an EMG of the lower extremities to rule out any evidence of nerve damage.
14. On June 20, 1997, Dr. Haworth saw plaintiff again to review her studies. The spine films showed disc space narrowing at different levels, greatest at L5-S1, with no evidence of stenosis. Dr. Haworth did not see any evidence of fracture or problems in the sacrum. The EMG was normal with no evidence of peripheral neuropathy or radiculopathy. Dr. Haworth stated that plaintiff should become more active and not worry about injuring her spine with activities such as household chores, sports or work.
15. Plaintiff was also seen for evaluation by Dr. Zane T. Walsh of Physicians Total Rehabilitation of Fayetteville. Dr. Walsh indicated that plaintiff had no evidence of sacral abnormality with mild degenerative changes in the lumbar disc. Dr. Walsh indicated that he did not believe that plaintiff had sustained a fracture of the sacrum. Dr. Walsh recommended a repeat MRI. The MRI was performed on July 13, 1998 and showed mild lateral recess stenosis at L4-L5, secondary to degenerative changes. Dr. Walsh recommended a second functional capacity evaluation, an MMPI and additional physical therapy.
16. Plaintiff refused to undergo the functional capacity evaluation, physical therapy or MMPI.
17. On November 11, 1998, Dr. Walsh stated that plaintiff had reached maximum medical improvement as a result of her injury. Dr. Walsh indicated that he would place no restrictions on plaintiff functionally. Dr. Walsh stated that plaintiff could perform at least sedentary or light work. Dr. Walsh stated that plaintiff had been non-compliant with medical treatment.
18. Plaintiff was offered a position as a Sub-Assembler I in defendant-employer's plant. Plaintiff was given written notice of the job offer on December 15, 1998.
19. On December 18, 1998, plaintiff met with representatives of defendant-employer. Plaintiff was offered the position of Sub-Assembler I, effective immediately. Plaintiff refused to accept defendant-employer's job offer.
20. On November 2, 1998, plaintiff sought care from Thomas C. Schwartz, D.C. of Columbus Family Chiropractic Center in Chadbourn. Plaintiff received spinal adjustments, spinallator, trigger point therapy and chiropractic adjustments.
21. Dr. Schwartz stated that plaintiff reached maximum medical improvement on August 13, 1999 and she retained a 15% permanent partial impairment of the back.
22. Plaintiff continued to follow-up with Dr. Schwartz through July 20, 2000.
23. On January 13, 1999, plaintiff saw Dr. Mark E. Brenner of Pinehurst Surgical Clinic in Pinehurst. Plaintiff complained of numbness and tingling involving the thumb, index and middle fingers of her left hand. Dr. Brenner stated that plaintiff had symptoms consistent with tendonitis of the thumb or de Quervains disease, with elements of carpal tunnel syndrome.
24. On February 20, 1999, plaintiff underwent de Quervains tenosynovectomy and carpal tunnel release on the left wrist. Dr. Brenner stated that plaintiff reached maximum medical improvement as a result of her surgery on July 1, 1999 and that she retained a 6% permanent partial impairment of the left hand as a result of her surgery.
25. Although plaintiff testified that she sustained an injury to her wrist on December 1, 1995, when she fell and that she had continuing complaints of wrist pain and numbness from that date, plaintiff's testimony was not consistent with the medical records or the depositions of the physicians who have testified.
26. There is no evidence in any medical record, or in the depositions, that plaintiff reported symptoms that she was having in her hands or wrists prior to January 13, 1999, when plaintiff was seen by Dr. Brenner.
27. Plaintiff's wrist condition and symptoms, which were treated by Dr. Brenner, were not causally related to plaintiff's compensable injury and defendants are not liable for the costs of such treatment.
28. Plaintiff has not worked for defendant-employer, or any other employer, since December 7, 1995.
29. Plaintiff's refusal to accept the position of Sub-Assembler I, which was offered to her on December 18, 1998, was not justified and is unreasonable. The job of Sub-Assembler I was reviewed and approved by Dr. Zane Walsh and Dr. Mark Brenner.
30. On November 2, 1998, plaintiff sought treatment from Thomas C. Schwartz of Columbus Family Chiropractic Center in Chadbourn. This treatment was not authorized by defendants or by the Industrial Commission. The Full Commission declines to retroactively authorize this treatment. Further, the Full Commission finds that treatment by Dr. Schwartz was not reasonable or necessary to effect a cure or give relief, in light of the previous medical treatment which plaintiff had received.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On December 1, 1995, plaintiff sustained a compensable injury to her back arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's refusal to accept the position of Sub-Assembler I was not justified, as the job was suitable to her capacity. Therefore, plaintiff is entitled to no compensation during the continuation of such refusal. N.C. Gen. Stat. § 97-32.
3. Chiropractic treatment by Thomas E. Schwartz was not authorized by defendants and approval was not sought from the Industrial Commission within a reasonable period of time. Accordingly, defendants are not responsible for the cost of such treatment. N.C. Gen. Stat. § 97-25.
4. Medical and surgical treatment by Dr. Mark E. Brenner for plaintiff's hands and wrists was not causally related to plaintiff's compensable injury. Accordingly, defendants are not liable for the costs of such treatment. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional compensation is suspended until such time as she ceases her refusal of suitable employment with defendant-employer or another employer.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury of December 1, 1995, after bills for said expenses have been submitted to the North Carolina Industrial Commission and approved for payment. However, defendants are not responsible for the cost of treatment by Thomas C. Schwartz, D.C. or Dr. Mark E. Brenner.
3. Defendants shall bear the costs.
This the ___ day of December 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb